Stanford H. Atwood, Jr., CA Bar No. 37362
Atwood & Associates
750 University Avenue, Suite 130
Los Gatos, California 95032
Tel:    408-395-5503
Fax:    408-395-5519
stanford@atwoodlaw.net

*Attorney for Defendant-Intervenor-Applicants*
*National Rifle Association of America and*
*Safari Club International*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| WILDEARTH GUARDIANS, *et al.*, | Case No. 4:21-cv-349-JSW |
|     Plaintiffs, | **Related Cases:**<br>  4:21-cv-344-JSW<br>  4:21-cv-561-JSW |
|     vs. | |
| DEBRA HAALAND, Secretary of the Department of the Interior, *et al.*, | **[PROPOSED] NOTICE OF MOTION AND MOTION TO DISMISS BY NATIONAL RIFLE ASSOCIATION OF AMERICA AND SAFARI CLUB INTERNATIONAL** |
|     Defendants, and | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA and SAFARI CLUB INTERNATIONAL, | **Hearing Date and Time:** To be determined based on disposition of attached Motion to Intervene |
|     Defendant-Intervenor-Applicants. | |

**[PROPOSED] NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, upon granting of the attached Motion to Intervene and as directed by the Honorable Jeffrey S. White, the National Rifle Association of America ("NRA") and Safari Club International ("SCI"), through this Notice and the attached documents, will respectfully move the Court to dismiss Plaintiffs' Amended Complaint under Fed. R. Civ. P.

12(b)(1).  That motion will be heard at Courtroom 5, 2d Floor, Oakland Federal Courthouse, 1301 Clay Street, Oakland, California 94612.

As explained in the attached Memorandum of Points and Authorities, Plaintiffs WildEarth Guardians *et al.* have failed to allege the elements of constitutional standing. Accordingly, this Court lacks jurisdiction to hear this matter and NRA and SCI respectfully request that the Amended Complaint be dismissed under Rule 12(b)(1).

Dated this 2nd day of April, 2021.

/s/ Stanford H. Atwood, Jr.
Stanford H. Atwood, Jr.
CA Bar No. 37362
Atwood & Associates
750 University Avenue, Suite 130
Los Gatos, California 95032
Tel:    408-395-5503
Fax:    408-395-5519
stanford@atwoodlaw.net

*Attorney for Defendant-Intervenor-Applicants National Rifle Association of America and Safari Club International*

Stanford H. Atwood, Jr., CA Bar No. 37362
Atwood & Associates
750 University Avenue, Suite 130
Los Gatos, California 95032
Tel:     408-395-5503
Fax:    408-395-5519
stanford@atwoodlaw.net

*Attorney for Defendant-Intervenor-Applicants*
*National Rifle Association of America and*
*Safari Club International*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| WILDEARTH GUARDIANS, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> DEBRA HAALAND, Secretary of the Department of the Interior, *et al.*, <br><br> Defendants, and <br><br> NATIONAL RIFLE ASSOCIATION OF AMERICA and SAFARI CLUB INTERNATIONAL, <br><br> Defendant-Intervenor-Applicants. | Case No. 4:21-cv-349-JSW <br><br> **Related Cases:** <br> 4:21-cv-344-JSW <br> 4:21-cv-561-JSW <br><br> **[PROPOSED] NOTICE OF MOTION AND MOTION TO DISMISS BY NATIONAL RIFLE ASSOCIATION OF AMERICA AND SAFARI CLUB INTERNATIONAL** <br><br> **Hearing Date and Time:** To be determined based on disposition of attached Motion to Intervene |

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-349-JSW

i

## SUMMARY OF THE ARGUMENT

Plaintiffs' Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack standing to assert their claims. *E.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs have not "clearly" alleged an injury in fact that is (i) concrete and particularized, and (ii) actual or imminent. *Id.* The Amended Complaint identifies aesthetic, recreational, and other interests of Plaintiffs' members in viewing gray wolves and recreating in areas near gray wolves in the Western U.S., but fails to explain how the delisting results in concrete harm to these interests. Plaintiffs assume that delisting will harm these interests, which is insufficient for standing. *Pub. Emps. for Envtl. Responsibility v. Bernhardt*, 2020 WL 601783, *4 (D.D.C. Feb. 7, 2020).

Plaintiffs also fail to clearly allege an imminent injury simply because states may, but are not required to, adopt "management regimes" that allow for the killing of gray wolves. The Supreme Court has rejected similar allegations. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013). Moreover, this claim is factually unsupported, as the states where Plaintiffs have identified an interest all restrict the taking of gray wolves or lack resident gray wolf populations.

Plaintiffs do not establish a particularized injury because they fail to meet the geographic nexus requirement. They must use an area affected by the delisting, not an area "roughly 'in the vicinity' of it." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565-66 (1992). The Amended Complaint does not identify any members using specific areas where the opportunity to observe wolves will decline as a result of the delisting.

Last, Plaintiffs have not established the third element of standing, redressability. They ask the Court to vacate and remand the delisting, but this Court cannot require the U.S. Fish and Wildlife Service ("FWS") to undertake a particular recovery program for wolves that will cause more wolves to inhabit the Western U.S. At most, this Court can require further analysis and explanation from the FWS. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Because the Court cannot redress Plaintiffs' alleged injury, Plaintiffs lack standing. *See Nuclear Info. & Resource Serv. v. NRC*, 457 F.3d 941, 955 (9th Cir. 2006).

## TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ..................................................... ii

TABLE OF CONTENTS..................................................... iii

TABLE OF AUTHORITIES ..................................................... iv

STATEMENT OF THE ISSUES TO BE DECIDED............................................1

STATEMENT OF RELEVANT FACTS ..................................................1

ARGUMENT:  PLAINTIFFS HAVE NOT CLEARLY ALLEGED
THEIR STANDING ..................................................3

    A.  Plaintiffs have not established that they suffered an injury in fact. ............4

        1.  The Amended Complaint does not clearly allege a concrete and
            imminent injury in fact from delisting. ..................................................5

        2.  Plaintiffs' injury is too speculative to be actual or imminent. ...............6

        3.  Plaintiffs' injury does not meet the geographic nexus requirement. .....9

    B.  A favorable Court order will not redress Plaintiffs' injury........................13

CONCLUSION..................................................14

# TABLE OF AUTHORITIES

## Cases

Am. Diabetes Ass'n v. U.S. Dep't of the Army,
938 F.3d 1147 (9th Cir. 2019) ...................................................................4

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ..................................................................................3

Ashley Creek Phosphate Co. v. Norton,
420 F.3d 934 (9th Cir. 2005) ...............................................................9, 12

Clapper v. Amnesty Int'l USA,
568 U.S. 398 (2013) ............................................................................ ii, 4, 7

Coal. for a Sustainable Delta v. Carlson,
No. 08-CV-397, 2008 WL 2899725 (E.D. Cal. July 24, 2008) ..........................11

Ctr. for Bio. Diversity v. Bernhardt,
946 F.3d 553 (9th Cir. 2019) ...................................................................3

Ctr. for Bio. Diversity v. Bernhardt,
No. 19-CV-5206, 2020 WL 4188091 (N.D. Cal. May 18, 2020) ........................4

DaimlerChrysler Corp. v. Cuno,
547 U.S. 332 (2006) ..................................................................................6

Daniels-Hall v. Nat'l Educ. Ass'n,
629 F.3d 992 (9th Cir. 2010) .................................................................6, 9

Fla. Power & Light Co. v. Lorion,
470 U.S. 729 (1985) ......................................................................... ii, 14

Indian Path Med. Ctr. v. Leavitt,
No. 04-CV-1000, 2006 WL 1663453 (D.D.C. June 9, 2006) ............................14

Kearns v. Cuomo,
415 F. Supp. 3d 319 (W.D.N.Y. 2019), aff'd, 981 F.3d 200 (2d Cir. 2020) ..........7

Lujan v. Defs. of Wildlife,
504 U.S. 555 (1992) .................................................... ii, 3, 4, 9, 11, 12, 13

Novak v. United States,
795 F.3d 1012 (9th Cir. 2015) .............................................................3, 4, 13

Nuclear Info. & Resource Serv. v. NRC,
457 F.3d 941 (9th Cir. 2006) ...................................................... ii, 4, 9, 14

Pub. Emps. for Envtl. Responsibility v. Bernhardt,
No. 18-CV-1547, 2020 WL 601783 (D.D.C. Feb. 7, 2020) ........................ ii, 5, 6

Shwarz v. United States,
234 F.3d 428 (9th Cir. 2000) ...............................................................3, 7

Sierra Club v. Morton,
405 U.S. 727 (1972) ...............................................................9, 10, 11, 12

Simon v. E. Ky. Welfare Rights Org.,
  426 U.S. 26 (1976) ...........................................................................13

Smith v. Pac. Props. & Dev. Corp.,
  358 F.3d 1097 (9th Cir. 2004) ..............................................................4

Spokeo, Inc. v. Robins,
  136 S. Ct. 1540 (2016).............................................................. ii, 3, 4

Thompson v. McCombe,
  99 F.3d 352 (9th Cir. 1996) ...................................................................3

Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,
  454 U.S. 464 (1982)...........................................................................12

Warren v. Fox Family Worldwide, Inc.,
  328 F.3d 1136 (9th Cir. 2003) ...........................................................3, 7

Warth v. Seldin,
  422 U.S. 490 (1975)..............................................................................3

White v. Lee,
  227 F.3d 1214 (9th Cir. 2000) ...........................................................3, 9

Whitmore v. Arkansas,
  495 U.S. 149 (1990)..............................................................................6

**Statutes**

5 U.S.C. § 706 ........................................................................................2

Cal. Fish and Game Code § 2080.1 .......................................................8

Colo. Rev. Stat. Ann. § 33-2-105 ...........................................................8

Wash. Rev. Code § 77.15.120................................................................8

Wis. Stat. § 29.185 ...............................................................................11

**Rules**

39 Fed. Reg. 1171 (Jan. 4, 1974) ...........................................................1

43 Fed. Reg. 9607 (Mar. 9, 1978) ..........................................................1

70 Fed. Reg. 73190 ................................................................................8

84 Fed. Reg. 9648 (Mar. 15, 2019).........................................................2

85 Fed. Reg. 69778 (Nov. 3, 2020)..................................................1, 2, 6

Fed. R. Evid. 201 ...................................................................................9

Fed. R. Civ. P. 12(b)(1)..........................................................................3

The National Rifle Association of America ("NRA") and Safari Club International ("SCI") move to dismiss the Plaintiffs' Amended Complaint (Dkt. 25) for lack of jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1).  The Amended Complaint should be dismissed because Plaintiffs lack standing to assert their claims.  NRA and SCI respectfully request that the Court grant this motion and dismiss the Amended Compliant.

STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Plaintiffs have carried their burden of clearly alleging constitutional standing; and specifically, whether Plaintiffs have established a (i) concrete and particularized, and (ii) actual or imminent injury in fact?

2. Whether Plaintiffs have carried their burden of clearly alleging constitutional standing; and specifically, whether Plaintiffs have established that a favorable ruling from this Court can redress their particularized injury in fact?

STATEMENT OF RELEVANT FACTS

The gray wolf (*Canis lupus*) in the United States is an Endangered Species Act ("ESA") success story.[1]  Gray wolves were nearly eradicated during the 19th and early- to mid-20th centuries as a result of human persecution and government-funded wolf-extermination efforts. 85 Fed. Reg. 69778, 69788 (Nov. 3, 2020) ("Delisting Rule").  Only about 1,040 gray wolves remained south of the Canadian border in Minnesota and Isle Royale, Michigan when the subspecies was first listed under the ESA in 1974.  *Id.*; 39 Fed. Reg. 1171 (Jan. 4, 1974).  In 1978, the U.S. Fish and Wildlife Service ("FWS") reclassified gray wolves in the lower 48 U.S. states as endangered, except for gray wolves in Minnesota, which had increased to over 1,200 wolves and were listed as threatened.  85 Fed. Reg. at 69788; 43 Fed. Reg. 9607 (Mar. 9, 1978).

The FWS and its state, tribal, and local partners invested heavily in recovery of gray wolf populations in the Western Great Lakes ("WGL") states of Michigan, Minnesota, and Wisconsin.

---

[1] U.S. Fish and Wildlife Service, Press Release (Oct. 29, 2020), https://www.fws.gov/news/ShowNews.cfm?ref=trump-administration-returns-management-and-protection-of-gray-wolves-to-&_ID=36801.

Similarly, the FWS and its state, tribal, and local partners implemented a recovery plan in the Northern Rocky Mountains ("NRM") states of Idaho, Montana, and Wyoming[2]—including the release and reintroduction of gray wolves into portions of the NRM.  *See, e.g.*, 85 Fed. Reg. at 69779–80.  These efforts paid off.  By the mid-1990s, the WGL wolf populations had far exceeded recovery plan criteria.  *Id.* at 69791.  The NRM wolf populations were not far behind— they exceeded recovery goals by 2002.  *Id.* at 69792.

Based on this success, the FWS has repeatedly sought to reduce or remove ESA protections for these wolves.  The FWS first reclassified populations of wolves from endangered to threatened in a 2003 rule, which was vacated by two district courts.  85 Fed. Reg. at 69781, Table 1.  In 2007, 2009, and again in 2011, the FWS again tried to delist the WGL wolves.  *See id.*  Those rules were also vacated by federal courts.  *Id.*  In 2009, the FWS removed NRM wolf populations in Idaho, Montana, and portions of Oregon, Washington, and Utah from the ESA list; although that rule was vacated by a district court, Congress legislatively reinstated the delisting.  *Id.*  In 2011, the FWS removed the NRM wolf population in Wyoming from the ESA lists.  The D.C. Circuit upheld that rule in 2017.  *Id.*

On March 15, 2019, the FWS proposed to remove ESA protections for all remaining gray wolf populations (except Mexican wolves).  84 Fed. Reg. 9648.  The FWS opened a 60-day comment period on the proposal, and then re-opened the comment period for another 60 days due to the amount of public interest.  85 Fed. Reg. at 69780.  The FWS received tens of thousands of comments, including comments from a number of state government agencies.

On November 3, 2020, the FWS published the final rule removing the gray wolf, except for the Mexican wolf, from the ESA lists of threatened and endangered species.  85 Fed. Reg. at 69778.  The Delisting Rule went into effect on January 4, 2021.  *Id.*  Plaintiffs then sued the FWS.  *See* Dkt. 1; Dkt. 25 (Amended Complaint).  Plaintiffs claim the delisting violates the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), and the ESA.

---

[2] The NRM also includes the eastern one-third of each of Washington and Oregon and a small part of north-central Utah.

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-349-JSW

**ARGUMENT:  PLAINTIFFS HAVE NOT CLEARLY ALLEGED THEIR STANDING**

The Amended Complaint should be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction.  *E.g.*, *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  The complaint must include "allegations [that] 'permit the court to infer more than the mere possibility of'" jurisdiction.  *Ctr. for Bio. Diversity v. Bernhardt*, 946 F.3d 553, 560 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  In reviewing the complaint, the court accepts the well-pleaded factual allegations as true and construes those allegations in the light most favorable to the plaintiff.  *Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015).  However, the court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations omitted).  Nor must the court accept as true factual allegations contradicted by judicially noticeable facts.  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  Rather, when a defendant contests the truth of the plaintiff's allegations, the court may consider "matters of public record without having to convert the motion into one for summary judgment."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citations omitted).

This Court lacks jurisdiction because Plaintiffs fail to establish their standing to challenge the Delisting Rule.  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The "'irreducible constitutional minimum'" to establish standing requires that (1) the plaintiff suffer an injury in fact, which is (2) causally connected to the defendant's challenged conduct, and (3) redressable by a favorable court decision.  *E.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  The plaintiff bears the burden of establishing these elements.  *Id.*  It is not a light burden.  Standing is "substantially more difficult to establish" where, as here, the "plaintiff is not himself the object of the government action or inaction he challenges."  *Lujan*, 504 U.S. at 562.  "More particular

facts are needed" than if the plaintiff were itself the regulated party, *Novak*, 795 F.3d at 1019, and the plaintiff must "clearly" allege facts for each element of standing, *Spokeo*, 136 S. Ct. at 1547.  Organizational plaintiffs, like those here, must clearly allege facts to demonstrate that at least one member would have standing to sue in his or her own right.  *See Nuclear Info. & Resource Serv. v. NRC*, 457 F.3d 941, 950 (9th Cir. 2006).[3]

The Amended Complaint does not even suggest a mere possibility of jurisdiction, because it does not establish the first and third elements of standing.  Plaintiffs do not clearly allege injury in fact, because they do not clearly allege that the removal of ESA protections will detrimentally impact the gray wolf.  In addition, Plaintiffs cannot obtain redress for their claimed injury.  They cannot force the FWS to take any specific actions to recover gray wolves, and the relief the Court can grant under the APA does not redress Plaintiffs' alleged injury.

A.     **Plaintiffs have not established that they suffered an injury in fact.**

An injury in fact is the "invasion of a legally protected interest" that is "(a) concrete and particularized," and "(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  A concrete injury is "real" and not "abstract." *Spokeo*, 136 S. Ct. at 1548.  A particularized injury "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.  An imminent injury in fact cannot be "speculative"; rather, it "'must be ***certainly impending*** … [and] allegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*,

---

[3] An organization can claim standing on behalf of itself, but must demonstrate both "frustration of its organizational mission," ***and*** "diversion of its resources to combat the particular [regulation] in question." *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004).  An organization "going about its business as usual" does not establish these requirements.  *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154–55 (9th Cir. 2019).  This Court recently held that an environmental organization whose alleged "additional expenditures" were actually "consistent with [its] typical activities" failed to demonstrate standing.  *Ctr. for Bio. Diversity v. Bernhardt*, No. 19-CV-5206, 2020 WL 4188091, *5 (N.D. Cal. May 18, 2020).  Likewise, the Amended Complaint does not demonstrate a diversion of resources from any Plaintiff; advocacy and conservation activities on behalf of gray wolves is part of the mission and business as usual of each Plaintiff.  *See* Dkt. 25, ¶¶ 16–23.

568 U.S. 398, 409 (2013) (citation omitted).  Plaintiffs fail to establish that they are affected by the FWS' allegedly unlawful conduct in a concrete, particularized, and imminent way.

                    1.    <u>The Amended Complaint does not clearly allege a concrete and imminent injury in fact from delisting.</u>

The Amended Complaint identifies aesthetic, recreational, and other interests of Plaintiffs' members in viewing gray wolves and recreating in areas near gray wolves in the Western United States.  *E.g.*, Dkt. 25, ¶ 28.  But the Amended Complaint fails to explain how the delisting results in concrete harm to these interests.  It not enough for Plaintiffs to ***assume*** that removal of ESA protections for the gray wolf, by itself, causes injury.  *E.g.*, *id.* ¶ 14 ("Plaintiffs – including their members, supporters, and staff – have suffered and continue to suffer injuries to their interests in gray wolves … caused by the Service's decision to remove gray wolves in the contiguous United States from the list of endangered and threatened wildlife."), ¶¶ 27, 29.  Rather, a plaintiff must provide concrete, imminent reasons why and how the delisting will damage their interests in enjoying gray wolves in the wild.  *E.g.*, *Pub. Emps. for Envtl. Responsibility v. Bernhardt*, No. 18-CV-1547, 2020 WL 601783, *4 (D.D.C. Feb. 7, 2020) ("*PEER*").

In *PEER*, the court rejected similar, conclusory allegations to those raised by Plaintiffs.  The *PEER* plaintiffs challenged removal of Louisiana black bears from the ESA list of threatened species.  *Id.* at *1.  They claimed the delisting harmed their abilities to observe and study the bears.  *Id.* at *4.  But they failed to provide "any evidence whatsoever demonstrating that delisting will lead inexorably to fewer [bears] or make it harder to observe [bears] in the wild." *Id.*[4]  As the court pointed out, "[i]t is not self-evident what the result of delisting will be

---

[4] As a factual matter, previously delisted species have been stable or increased in population size following removal of ESA protections.  For example, the NRM gray wolves "continues to hold steady" following delisting.  FWS, Testimony before House Subcommittee on Oversight and Investigations, https://www.doi.gov/ocl/management-wolves.  Bald eagle populations continued to increase following delisting.  *E.g.*, https://www.fws.gov/migratorybirds/pdf/management/EagleRuleRevisions-StatusReport.pdf.  This Court may take judicial notice of information posted

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-349-JSW

for [bear] population levels.  The Delisting Rule itself notes that the main [bear] subpopulations 'are stable or increasing,' and that the probability of long-term persistence is 99.6%."  *Id.*

Similarly, the Amended Complaint fails to include any allegations demonstrating why and how delisting will detrimentally impact their interests in observing and recreating with gray wolves.  *E.g.*, Dkt. 25, ¶¶ 14, 27–29.  As in *PEER*, the impact of the delisting on wolf populations is not self-evident.  The Delisting Rule concludes that wolf populations are stable or increasing and will remain "well above the recovery criteria" under state management.  85 Fed. Reg. at 69884.  Neither Plaintiffs nor this Court can assume that delisting will result in decreased wolf populations or decreased opportunities to observe wolves in the wild.[5]  *E.g.*, *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990) ("The litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements.  A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.").  It is Plaintiffs' burden to clearly allege the element of ***injury***, not just their ***interest*** in the species at issue.  Their Amended Complaint should be dismissed because they do not carry this burden.

2.    Plaintiffs' injury is too speculative to be actual or imminent.

Plaintiffs also fail to allege an actual or imminent injury; they only identify conditions that may potentially cause an injury.  In only one paragraph do Plaintiffs even attempt to connect their interests in observing wolves and the Delisting Rule:

> Upon delisting, gray wolves may be killed under state management regimes in the West Coast states of Oregon, Washington, and California, and/or in the Southern and/or Central Rocky Mountains states, including Colorado, Utah, Nevada, and northern New Mexico.  Any wolf killing by State actors would harm Plaintiffs' members', supporters', and staff's interests in gray wolves in the American West

---

on an agency's official website.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

[5] Standing "is not dispensed in gross."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006).  That plaintiffs in past wolf delisting cases may have had standing has no bearing on whether Plaintiffs have carried their constitutional burden.  Both the factual and legal situation for gray wolves have changed since prior cases were decided.

and elsewhere and decrease their ability to observe, or attempt to observe, and enjoy gray wolves and their sign in the wild.

Dkt. 25, ¶ 26.  This allegation assumes a legal and factual situation, and the Court need not accept Plaintiffs' legal or unsupported factual inferences as true.  *Warren*, 328 F.3d at 1139; *Shwarz*, 234 F.3d at 435.  Yet, even construing this allegation liberally, Plaintiffs do ***not*** allege an injury in fact.  They merely plead a legal situation that ***potentially*** allows for an injury to occur in some amorphous way.  That attenuated pleading is too speculative to satisfy the requirements of Article III standing.  *Clapper*, 568 U.S. at 410–11.

In *Clapper*, the Supreme Court rejected the plaintiffs' claim that their communications would be intercepted under the challenged statute.  The Court found this too "speculative" to satisfy the requirement of a "certainly impending" injury.  *Id.* at 411.  According to the Court, the statute under review "at most authorize[d]—but d[id] not mandate or direct—the surveillance that [the plaintiffs'] fear," rendering the plaintiffs' allegations "necessarily conjectural."  *Id.* at 412 ("Simply put, respondents can only speculate as to how the Attorney General and the Director of National Intelligence will exercise their discretion in determining which communications to target."); *accord Kearns v. Cuomo*, 415 F. Supp. 3d 319, 335 (W.D.N.Y. 2019), *aff'd*, 981 F.3d 200 (2d Cir. 2020) (holding that where a state official had multiple options for administering challenged law, the official's ability to act in a manner contrary to the plaintiff's interests "is a far cry from the concrete and particularized injury necessary to establishing standing").

As in *Clapper*, Plaintiffs' allegations are necessarily conjectural.  That states have an option, following the delisting, to "kill" gray wolves under "state management regimes" does not mean that states ***will*** "kill" gray wolves.  Nor does the fact that "killing" could occur demonstrate, by itself, that Plaintiffs' members will have less of an opportunity to observe gray wolves in the wild.  The Amended Complaint alleges nothing but a legal situation where ESA protections for gray wolves have been reduced.  It never takes the necessary step of alleging a concrete and imminent injury from this reduction of ESA protections.

Moreover, this one paragraph does not support Plaintiffs' standing because the allegation is patently untrue.  In most states in which Plaintiffs assert an interest, "state management regimes" specifically provide that the taking (or killing) of gray wolves is prohibited or heavily restricted.  Three states do not have resident gray wolf populations.  The facts show:

- In California, Washington, and Colorado, the gray wolf is listed as an endangered species under state law and is protected from harassment, hunting, or killing.  Thus, Plaintiffs' allegation is contradicted by publicly available documents demonstrating that these "state management regimes" do not authorize the "killing" of gray wolves.[6]

- In Oregon, wolves were removed from the state list of endangered species in 2015 after surpassing recovery targets.  But the Wolf Conservation and Management Plan and its associated regulations do not authorize a hunting season or "take quotas" for gray wolves.  The plan and regulations only permit the limited take of a gray wolf that is actively engaged in biting a dog or livestock, or when deemed necessary (and in strictly controlled conditions) by the Oregon Department of Fish and Wildlife.  These rules were in place in eastern Oregon prior to the Delisting Rule, as part of the delisted NRM wolf population.[7]  Thus, Plaintiffs' allegation is contradicted by publicly available documents demonstrating that Oregon's "management regime" does not authorize the "killing" of gray wolves in any way that would impact the ability of Plaintiffs' members to view these wolves.

- In Nevada, Utah, and New Mexico, there are no resident gray wolf populations, and transient wolves do not remain in-state.[8]  Thus, Plaintiffs' allegation that they have an

---

[6] Cal. Fish and Game Code § 2080.1; Wash. Rev. Code § 77.15.120; Colo. Rev. Stat. Ann. § 33-2-105.

[7] *See* Rules implementing the Oregon Wolf Conservation and Management Plan, available at https://secure.sos.state.or.us/oard/viewSingleRule.action?ruleVrsnRsn=258797.

[8] *E.g.*, 70 Fed. Reg. 73190 (publishing 90-day finding on delisting petition submitted by the Nevada Department of Wildlife on the grounds that "the historic presence of wolves in Nevada was limited to transient, solitary individuals, Nevada does not contain suitable habitat to support wolf populations, and no viable populations of wolves ever existed in Nevada"); Utah Div. of Wildlife Res., https://wildlife.utah.gov/wolf/wolves.pdf ("Although there have been confirmed

1    interest in viewing wolves in these states is contradicted by publicly available documents

2    demonstrating that gray wolf populations do not inhabit these states.

3    Because Plaintiffs' allegation with respect to "state management regimes" is contradicted by

4    publicly available facts of which this Court may take judicial notice, the Court need not—and

5    should not—accept these allegations as true. *E.g.*, *White*, 227 F.3d at 1242; Fed. R. Evid. 201;

6    *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (holding it "appropriate

7    to take judicial notice" of information "made publicly available by government entities").

8    Plaintiffs do not and cannot demonstrate that "state management regimes" in the Western U.S.

9    will cause an imminent injury to their interests in observing gray wolves.  In short, Plaintiffs

10   have not carried their burden of alleging a concrete and imminent injury in fact, and their

11   Amended Complaint should be dismissed. *E.g.*, *Lujan*, 504 U.S. at 561.

12                    3.    Plaintiffs' injury does not meet the geographic nexus requirement.

13        Plaintiffs also fail to establish a concrete and particularized injury from a diminished

14   opportunity to enjoy gray wolves in areas where their members recreate.  "[A] plaintiff claiming

15   injury from environmental damage must the use the area affected by the challenged activity and

16   not an area roughly 'in the vicinity' of it." *Lujan*, 504 U.S. at 565-66.  Thus, for an injury in fact

17   to be "concrete and particularized," the plaintiff must be a "person[ ] for whom the aesthetic and

18   recreational values of the area will be lessened by the challenged activity." *Sierra Club v.*

19   *Morton*, 405 U.S. 727, 735 (1972).  The Ninth Circuit frames this requirement as a "'geographic

20   nexus' between the individual asserting the claim and the location suffering an environmental

21   impact." *Nuclear Info. & Res. Serv.*, 457 F.3d at 950 (quoting *Ashley Creek Phosphate Co. v.*

22   *Norton*, 420 F.3d 934, 938 (9th Cir. 2005)).

23        In *Sierra Club*, plaintiff Sierra Club alleged that a challenged development would

24   detrimentally impact the environment and wildlife of Mineral King Valley and "impair [the

25   _____

26   wolf sightings over the years … there are no known established packs in Utah."); FWS, Final
     Environmental Impact Statement (2014) (noting that gray wolves do not currently inhabit the
27   Mexican wolf range in Arizona and New Mexico).

28   NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-349-JSW

                                                                                    9

plaintiff's] enjoyment of the park for future." 405 U.S. at 734. The Supreme Court recognized the plaintiff's "cognizable interest" in the aesthetic and recreational values of the Valley. However, according to the Court, "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.* The Court held that the plaintiff failed to establish that its members' interest would be injured by the development so as to confer standing:

> The impact of the proposed changes in the environment of Mineral King will not fall indiscriminately upon every citizen. The alleged injury will be felt directly only by those who use Mineral King and Sequoia National Park, and for whom the aesthetic and recreational values of the area will be lessened by the highway and ski resort. … The Sierra Club failed to allege that it or its members would be affected in any of their activities or pastimes by the Disney development. ***Nowhere*** in the pleadings or affidavits did the Club state that its members use Mineral King for any purpose, much less that they use it in any way that would be ***significantly affected by the proposed actions*** of the respondents.

*Id.* at 734–35 (emphasis added).

Plaintiffs here allege aesthetic, recreational, and other interests in observing gray wolves in the Western U.S., particularly in Oregon, Washington, and California. *E.g.*, Dkt. 25, ¶ 15 ("American West"), ¶ 16 ("throughout the West"); ¶ 17 ("northern California to southeastern Alaska"); ¶ 18 ("northwest California[]"); ¶¶ 19–20 (southern Oregon and northern California ); ¶ 21 ("Inland Northwest"); ¶ 22 ("Salt Lake City, Utah"); ¶ 23 (Washington); *see also* ¶ 25 (alleging that Plaintiffs, and their members, supporters, and staff, live, recreate, and enjoy observing gray wolves "across the western United States," including "the Pacific Northwest, Southern and/or Central Rocky Mountains, and Northern Rocky Mountains"). As in *Sierra Club*, they have shown cognizable interests in the wolves. But, as in *Sierra Club*, Plaintiffs do not satisfy the rest of the test for injury in fact. They do not allege that they are among the persons using ***specific*** areas where the opportunity to observe wolves will decline as a result of state actions that will negatively impact wolf populations, which states could not do prior to the delisting. The Complaint fails this test for the following four reasons.

*First*, Plaintiffs allege that their members observe and enjoy gray wolves throughout the West and across entire states.  The Supreme Court has repeatedly rejected the same type of broad pleading.  *E.g.*, *Sierra Club*, 405 U.S. at 734–35; *Lujan*, 504 U.S. at 561.  Plaintiffs must—but do not—allege that they use the specific areas significantly affected by state management actions which allegedly harm wolves.  Absent such allegations, Plaintiffs lack standing.

*Second*, the Amended Complaint focuses on the need to further recover wolves in the Western U.S. and objects to the FWS' alleged lack of analysis regarding these populations.  *E.g.*, *id.* ¶¶ 111–13, 135, 143–54.  But it does not explain how gray wolf populations will decline in these states due to the delisting.  Without tying back to a concrete risk of decreased opportunity to view wolves, Plaintiffs have not carried their burden of "clearly alleging" that the delisting has injured their interests.  *Accord Coal. for a Sustainable Delta v. Carlson*, No. 08-CV-397, 2008 WL 2899725, *13 (E.D. Cal. July 24, 2008) (finding the plaintiff did not establish an injury in fact because he did not "explain in a 'concrete and particularized'" manner how the challenged regulations "impact and interfere with his aesthetic and recreational interests … the Complaint contains only conclusory allegations of injury which do not explain how [he] *is actually injured by* the … regulations") (emphasis added).

*Third*, and further emphasizing their lack of standing, the Amended Complaint lacks *any* reference to Wisconsin—the only state that has held and plans to imminently hold a hunting season for gray wolves as a result of the delisting.[9]  It never alleges that any of Plaintiff organizations is based in Wisconsin or focuses its efforts on Wisconsin, or that Plaintiffs have any members living or recreating in Wisconsin.  Most critically, the Amended Complaint fails to establish a geographic nexus between hunting of gray wolves and the use of any members of the specific areas where hunting did or will occur.  The Amended Complaint never alleges that Plaintiffs have any members living or recreating in areas where wolf harvest did or will occur, or that, as a result of this geographic proximity, Plaintiffs have any members who experienced or

---

[9] Wisconsin Dep't of Natural Res., https://dnr.wisconsin.gov/topic/hunt/wolf/index.html; *see also* Wis. Stat. § 29.185.

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-349-JSW

will imminently experience a diminished opportunity to observe wolves in the specific areas affected by a harvest. *See Lujan*, 504 U.S. at 565–66 ("a plaintiff claiming injury from environmental damage must the use the area affected by the challenged activity and not an area roughly 'in the vicinity' of it") (citation omitted). As in *Sierra Club*, Plaintiffs here cannot gloss over the requirements of standing. Their members must use an area significantly affected by the Delisting Rule; if they are not "among the injured" from the FWS' challenged activity, then Plaintiffs lack standing. *Sierra Club*, 405 U.S. at 735; *see also Ashley Creek Phosphate*, 420 F.3d at 938–39 (finding plaintiff did not establish a geographic nexus given that its phosphate leases were located 250 miles away in a different state and it failed to allege recreational use of the affected area).

  ***Last***, Plaintiffs also do not establish that wolf populations in Wisconsin or the other WGL states will decline as a result of the delisting. In fact, Plaintiffs acknowledge the FWS' conclusion that the WGL wolf populations, including wolves in Wisconsin, have recovered to the point that ESA protections are no longer warranted. *E.g.*, Dkt. 25, ¶¶ 5, 45–46, 134. Plaintiffs do not challenge the FWS' evaluation of data related to the WGL wolves—their objections are focused on wolves in the Western U.S. *E.g.*, *id.* ¶¶ 93, 134–35, 143–54. Plaintiffs do not establish a concrete, particularized, and imminent injury in fact from conduct affecting wolves whose recovery is unquestioned ***and unchallenged***. At most, Plaintiffs assert a generalized disagreement with the FWS' repeated determinations that gray wolves should be removed from the ESA lists. That generalized grievance, even if grounded on alleged violations of the ESA, is too speculative and non-particularized to support standing. *E.g.*, *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 483 (1982) ("assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning").

In sum, in the areas where Plaintiffs experience wolves, they have not alleged and cannot plausibly allege any detrimental impact from the Delisting Rule to support an injury in fact.  In the one state where wolves have or imminently will be harvested, Plaintiffs have alleged neither a geographic nexus, nor a detrimental impact to the long-term recovery of healthy wolf populations.  Plaintiffs have not met their burden of establishing the first element of standing.  Their Amended Complaint should be dismissed.  *Lujan*, 504. U.S. at 561.

### B.       A favorable Court order will not redress Plaintiffs' injury.

Plaintiffs also fail to clearly allege that it is "'likely,' as opposed to merely speculative, that [their alleged] injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43 (1976)).  Plaintiffs must offer "much more" to demonstrate the redressability element, because they are not "an object of the action … at issue."  *Id.* at 562.  To carry this burden, Plaintiffs must "show … a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered."  *Novak*, 795 F.3d at 1019-20 (internal quotations and citations omitted).  Plaintiffs cannot establish redressability in this case, because the only relief available to this Court would not redress Plaintiffs' identified injury.

As explained above, Plaintiffs do not tie their interests in observing wolves to any specific decline in wolf numbers or wolf observation opportunities as a result of any imminent actions by the states or third parties like hunters.  Their real objection—and the bulk of their Amended Complaint—focuses on the FWS' failure to recover wolves across the U.S.  It is that failure which allegedly prevents further wolf viewing opportunities and prevents Plaintiffs from achieving their asserted policy goals.  *E.g.*, Dkt. 25, ¶¶ 5, 25, 28, 93, 143–54.  Yet despite this broad injury, which is based on the actions that the FWS should have taken to recover gray

1    wolves, Plaintiffs request very narrow relief: that the Court vacate and remand the Delisting

2    Rule, "with instructions to comply with the ESA and APA, as alleged herein." *Id.*, p. 46.[10]

3          But even if the Court grants this relief and vacates the Delisting Rule, this Court cannot

4    force the FWS to undertake any particular recovery program for wolves in the Western U.S.

5    This Court lacks authority to require the FWS act "in any particular fashion" with respect to the

6    recovery of gray wolves; "[r]ather, because this court acts as an appellate court in administrative

7    review cases of this type, the most it is empowered to do is to remand and order the Secretary to

8    take further action consistent with the law." *Indian Path Med. Ctr. v. Leavitt*, No. 04-CV-1000,

9    2006 WL 1663453, *4 (D.D.C. June 9, 2006).  Put differently, in an APA review case, "[t]he

10   task of the reviewing court is to apply the appropriate APA standard of review … If the record

11   before the agency does not support the agency action, if the agency has not considered all

12   relevant factors, … the proper course, except in rare circumstances, is to remand to the agency

13   for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729,

14   743–44 (1985).

15         Given the Court's limited options, Plaintiffs cannot obtain the redress of their substantive

16   injury.  All they can do is seek further investigation or explanation from the FWS.  A plaintiff

17   who fails to establish any likelihood that remand will directly redress its claimed injury lacks

18   standing.  *Nuclear Info. & Res. Serv.*, 457 F.3d at 955.  And for this additional reason, the

19   Amended Complaint should be dismissed.

20                                **CONCLUSION**

21         For the reasons stated above, the Amended Complaint does not meet the requirements for

22   establishing Article III standing.  Plaintiffs have failed to clearly allege an injury in fact,

23

24

25   [10] "As alleged herein" apparently refers to the seven Claims for Relief, which allege that the
     FWS performed an inadequate analysis under the ESA (First through Fifth), developed an
26   inadequate post-delisting monitoring program for wolves outside the WGL (Sixth), and failed to
     provide adequate notice and comment under the APA (Seventh).  *See* Dkt. 25, pp. 25–45.
27

28   NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-349-JSW

                                                                                    14

redressability, or standing as organizations.  Because Plaintiffs have not met their burden, NRA and SCI respectfully request that this Court dismiss the case for lack of jurisdiction.

Dated this 2nd day of April, 2021.

/s/ Stanford H. Atwood, Jr.
Stanford H. Atwood, Jr.
CA Bar No. 37362
Atwood & Associates
750 University Avenue, Suite 130
Los Gatos, California 95032
Tel:    408-395-5503
Fax:    408-395-5519
stanford@atwoodlaw.net

*Attorney for Defendant-Intervenor-Applicants National Rifle Association of America and Safari Club International*

Michael T. Jean, MI Bar No. P76010*
Hadan W. Hatch, UT Bar No. 17671*
National Rifle Association of America
11250 Waples Mill Road
Fairfax, Virginia 22030
Tel:    703-267-1161
Fax:    703-267-3976
mjean@nrahq.org
hhatch@nrahq.org

*Attorneys for Defendant-Intervenor-Applicant National Rifle Association of America*

*Motion for pro hac vice forthcoming

Jeremy E. Clare, D.C. Bar No. 1015688*
Regina A. Lennox, D.C. Bar No. 1671299*
Safari Club International
501 2nd Street N.E.
Washington, D.C. 20002
Tel:    202-543-8733
Fax:    202-403-2244
jclare@safariclub.org
rlennox@safariclub.org

*Attorneys for Defendant-Intervenor-Applicant Safari Club International*

*Motion for pro hac vice forthcoming

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-349-JSW

15

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

<u>/s/ Stanford H. Atwood, Jr.</u>
Stanford H. Atwood, Jr.