George R. Pitts (CA Bar 109827)
Birch, Horton, Bittner, & Cherot, P.C.
1100 Connecticut Ave., NW, Suite 825
Washington, D.C. 20036
(202) 659-5800
gpitts@bhb.com

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS, *et al.*, | Case No. 4:21-cv-349-JSW |
|     Plaintiffs, | |
| vs. | **Related Cases:** 4:21-cv-344-JSW 4:21-cv-561-JSW |
| DEBRA HAALAND, *et al.*, | |
|     Defendants, and | **NOTICE OF MOTION AND MOTION TO INTERVENE BY SPORTSMEN'S ALLIANCE FOUNDATION, ROCKY MOUNTAIN ELK FOUNDATION, MICHIGAN BEAR HUNTERS ASSOCIATION, AND WISCONSIN BEAR HUNTERS ASSOCIATION** |
| SPORTSMENS ALLIANCE FOUNDATION, ROCKY MOUNTAIN ELK FOUNDATION, WISCONSIN BEAR HUNTERS ASSOCIATION, and MICHIGAN BEAR HUNTERS ASSOCIATION, | |
|     Applicant-Defendant-Intervenors. | **Hearing Date:** June 18, 2021 **Hearing Time:** 9:00 **Judge:** Hon. Jeffery S. White |

Sportsmen Conservation Coalition Notice of Motion and Motion to Intervene, Case No. 4:21-cv-349-JSW

1

**NOTICE OF MOTION AND MOTION TO INTERVENE**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 18, 2021 or as soon thereafter as counsel may be heard by the Honorable Jeffrey S. White, at Courtroom 5, 2d Floor, Oakland Federal Courthouse, 1301 Clay Street, Oakland, California 94612, the Sportsmen's Alliance Foundation ("SAF"), Rocky Mountain Elk Foundation ("RMEF"), Wisconsin Bear Hunters Association ("WBHA"), and Michigan Bear Hunters Association ("MBHA") (collectively, "Sportsmen Conservation Coalition," "Coalition," or "Applicant-Intervenors") through this Notice and the attached documents, will and hereby do, respectfully move this Court to intervene as defendants as of right under Fed. R. Civ. P. 24(a). In the alternative, the Sportsmen Conservation Coalition and its constituent entities, will and hereby do respectively move the Court to permissively intervene as defendants under Fed. R. Civ. P. 24(b).

These lawsuits seek judicial review of a 2020 decision by the U.S. Fish and Wildlife Service ("FWS") to remove gray wolves (*Canis lupus*) in the contiguous 48 United States ("Lower 48") from the list of endangered and threatened species maintained by FWS under the Endangered Species Act ("ESA"). The organizations in the Sportsmen Conservation Coalition seek to protect the interests of their respective members in: (1) being able to lawfully defend their hunting dogs from attacks by wolves when hunting other species, (2) hunting elk, deer and other species whose populations can be directly and adversely affected by unmanaged wolf predation, and (3) being able to lawfully hunt gray wolves where those populations are recovered. Additionally, one of the organizations, RMEF, has expended substantial sums in land acquisitions, conservation easements, other habitat protection and enhancement activities, as well as financially supporting research concerning elk, wolves and other species, and seeks to defend its direct organizational interest in realizing the benefit of those expenditures, which will be frustrated if wolves cannot be managed by the states (because they are relisted as "endangered" under

---

the ESA) and so continue to prey on elk and other wildlife freely. Applicant-Intervenors are entitled to intervention as of right because (1) this Motion is timely and does not prejudice any existing party, (2) the Sportsmen Conservation Coalition has legally protectable interests, (3) those interests will be impaired if Plaintiffs' challenge succeeds, and (4) those interests are not adequately represented by Federal Defendants, Plaintiffs, or Defendant-Intervenors, the National Rifle Association ("NRA") and Safari Club International ("SCI"). In the alternative, the Coalition requests that this Court grant permissive intervention in whole or in part for the reasons noted above and because their interests share common questions of law and fact with the main action.

Applicant-Intervenors move to intervene based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, and the concurrently filed Declarations. Applicant-Intervenors are concurrently filing an unopposed motion for a 7-day extension of the due date of their responsive pleadings under Fed.R.Civ.P. 24(c), from today to May 12, 2021. Ninth Circuit case law notes that the Court may modify pleading requirements under Fed.R.Civ.P. 24(c), and thus can defer this requirement. Deferral is consistent with the Court's general authority under Fed.R.Civ.P. 6(b) to extend due dates "for good cause." Here, good cause for a short extension of time exists because, among other things, the Motion to Intervene itself states the Coalition's position in the litigation and so fully accomplishes the disclosure purposes of Rule 24(c).

Counsel for the Sportsmen Conservation Coalition has notified the existing parties' counsel of their intent to move to intervene. Plaintiffs reserve taking a position on the motion until they are able to review and consider it. Federal Defendants take no position.

George R. Pitts (CA Bar 109827)
Birch, Horton, Bittner, & Cherot, P.C.
1100 Connecticut Ave., NW, Suite 825
Washington, D.C. 20036
(202) 659-5800
gpitts@bhb.com

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS, *et al.*, | Case No. 4:21-cv-349-JSW |
| Plaintiffs, | **Related Cases:**<br>4:21-cv-344-JSW<br>4:21-cv-561-JSW |
| vs. | |
| DEBRA HAALAND, *et al.*, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO JOINTLY INTERVENE BY SPORTSMEN'S ALLIANCE FOUNDATION, ROCKY MOUNTAIN ELK FOUNDATION, MICHIGAN BEAR HUNTERS ASSOCIATION, AND WISCONSIN BEAR HUNTERS ASSOCIATION** |
| Defendants, and | |
| SPORTSMENS ALLIANCE FOUNDATION, ROCKY MOUNTAIN ELK FOUNDATION, WISCONSIN BEAR HUNTERS ASSOCIATION, and MICHIGAN BEAR HUNTERS ASSOCIATION, | |
| Applicant-Defendant-Intervenors. | **Hearing Date:** June 18, 2021<br>**Hearing Time:** 9:00<br>**Judge:** Hon. Jeffery S. White |

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I.   STATEMENT OF THE ISSUES TO BE DECIDED .......................................... 2

II.  INTRODUCTION AND SUMMARY ................................................................ 3

III. STATEMENT OF THE RELEVANT FACTS ................................................... 4

    A.  Defending Hunting Dogs from Wolves. ................................................. 5

    B.  Impact of Wolf Predation on Elk. ......................................................... 5

    C.  Public Hunting of Wolves. ..................................................................... 6

    D.  Conservation Easements, Other Habitat Protection Transactions, and Research. ....7

    E.  Hunting Guides. ..................................................................................... 7

    F.  Objectives for Intervention. ................................................................... 8

IV. ARGUMENT ..................................................................................................... 10

    A.  Intervention as of Right. ...................................................................... 10

        1.  The Motion to Intervene is Timely. ............................................ 11

        2 & 3.  Applicant-Intervenors Have a Significant Interest in the Subject Matter of the Underlying Action, and Denial of this Motion would Impair or Impede their Ability to Protect Their Interests ................................................................... 11

        4.  Applicant-Intervenor's Interests are not Adequately Represented by the Existing Parties ................................................................................... 13

    B.  Permissive Intervention. ...................................................................... 18

IV. CONCLUSION .................................................................................................. 19

CERTIFICATE OF SERVICE ................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Animal Protection Institute v. Merriam*, 242 F.R.D. 524 (D. Minn. 2006) ...................................14

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006)............................11, 12

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011) ........13, 18

*Defenders of Wildlife v. Norton*, 258 F.3d 1136 (9th Cir. 2001) ...................................................17

*Defenders of Wildlife v. Zinke*, 849 F.3d 1077 (D.C. Cir. 2017) ....................................................9

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ............................................................11, 12

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995).......................14

*Gonzales v. Arizona*, 485 F.3d 1041 (9th Cir. 2007) ..................................................................11

*Humane Soc'y of the U.S. v. Zinke*, 865 F.3d 585 (D.C. Cir. 2017) ...............................................4

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) ....................................18, 19

*NAACP v. New York*, 413 U.S. 345 (1973)...................................................................................11

*NRDC v. Costle*, 561 F.2d 904 (D.C.Cir.1977) ...........................................................................13

*Railroad Trainmen v. B&O Railroad*, 331 U.S. 519 (1947)........................................................18

*Sierra Club v. U.S. EPA*, 995 F.2d 1478 (9th Cir. 1993)..............................................................12

*Southwest Ctr. For Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir.2001) ............................13

*Trbovich v. United Mine Workers*, 404 U.S. 528 n.10 (1972).......................................................13

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).....................................18, 19

**Statutes**

125 Stat. 38 (2011)........................................................................................................................9

16 U.S.C. § 1531 .........................................................................................................................14

16 U.S.C. § 1532 ..................................................................................................................10, 16

Pub. L. 112–10, § 1713 ......................................................................................9

**Federal Regulations**

50 C.F.R. 17.11(h) (2019) ...................................................................................3

50 C.F.R. 17.11(h) (2021) ...................................................................................3

50 C.F.R. 17.21(c) (2021) ...............................................................................5, 12

50 C.F.R. 17.40(d) (2019) ...............................................................................5, 6

76 Fed. Reg. 25590 (May 5, 2011) ......................................................................9

77 Fed. Reg. 55530 (Sept. 10, 2012) ..................................................................9

85 Fed. Reg. 69778 (Nov. 3, 2020) ...................................................2, 3, 8, 9, 10

Pursuant to Fed.R.Civ.P. 24, the Sportsmen's Alliance Foundation ("SAF"), the Rocky Mountain Elk Foundation, Inc. ("RMEF"), the Michigan Bear Hunters Association ("MBHA"), and the Wisconsin Bear Hunters' Association ("WBHA") (collectively, "Sportsmen Conservation Coalition" or "Applicant-Intervenors") respectfully file this Motion to Intervene as defendants in this action. Supporting declarations of officers and members of the organizations are filed with this Motion as Exhibits. Plaintiffs have been consulted and have not yet taken a position on this motion, although they reserve the right to oppose it upon seeing the filed motion.[1] Plaintiffs and Applicant-Intervenors have, however, reached agreement on a set of conditions designed to streamline the briefing of the case should intervention be allowed.[2] Applicant-Intervenors are concurrently filing an unopposed motion for a one-week extension of the due date of their Proposed Answers under Fed.R.Civ.P. 24(c), from today to May 12, 2021.

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether this Court should grant the organizations in the Sportsmen Conservation Coalition intervention as of right under Fed.R.Civ.P. 24(a)(2) to represent their interests and the interests of their members (described below) in these related cases?

2.      In the alternative, whether the organizations in the Sportsmen Conservation Coalition should be granted permission to intervene under Fed.R.Civ.P. 24(b) because their defense of the delisting

---

[1] Federal Defendants take no position on intervention. Defendant Intervenors Safari Club International and the National Rifle Association ("SCI/NRA") do not oppose intervention.

[2] Applicant-Intervenors (1) are free to move without opposition from Plaintiffs to file their own summary judgment brief equal in length to that filed by Plaintiffs, and if such motion is not granted will file either: (a) their own summary judgment briefs not exceeding two-thirds the length of Plaintiffs' briefs, or (b) joint briefs with the other non-governmental defendant intervenors not exceeding the full-length allotted Plaintiffs. Applicant-Intervenors will file their summary judgment briefs seven (7) days after the Federal Defendants' file theirs, and will endeavor in good faith to avoid duplicating the Federal Defendants' briefing. They will not initiate discovery unless Plaintiffs or Federal Defendants do so. They will file proposed answers rather than motions to dismiss. They are free to support another party's motion to dismiss.

Sportsmen Conservation Coalition Notice of Motion and Motion to Intervene, Case No. 4:21-cv-349-JSW

of gray wolves in the contiguous 48 States under the Endangered Species Act shares common questions of law and fact with Plaintiffs' claims challenging that delisting?

## INTRODUCTION

The three separate but related lawsuits filed by Plaintiffs WildEarth Guardians et al., Defenders of Wildlife et al. ("DOW"), and Natural Resource Defense Council ("NRDC") all seek judicial review of a 2020 decision by the U.S. Fish and Wildlife Service ("FWS") to remove gray wolves (*Canis lupus*) in the contiguous 48 United States ("Lower 48") from the list of endangered and threatened species maintained by FWS under the Endangered Species Act ("ESA"). *Endangered and Threatened Wildlife and Plants; Removing the Gray Wolf (Canis lupus) From the List of Endangered and Threatened Wildlife*, 85 Fed. Reg. 69778 (Nov. 3, 2020) (the "Final" Rule" or the "Delisting Rule").

Applicant defendant-intervenors – the hunting, wildlife and conservation organizations making up the Sportsmen Conservation Coalition – are associations that, like Plaintiffs, seek to protect the interests of their members in this case. The organizations in the Sportsmen Conservation Coalition seek to protect the interests of their respective members in: (1) being able to lawfully defend their hunting dogs from attacks by wolves when hunting other species, (2) hunting elk, deer and other species whose populations can be directly and adversely affected by unmanaged wolf predation, and (3) being able to lawfully hunt gray wolves where those populations are recovered.[3] Members of the organizations in the coalition include recreational hunters and also hunting guides and outfitters ("hunting guides") who earn income from leading hunts in wolf habitat. Additionally, one of the organizations, RMEF, has expended substantial sums in land acquisitions, conservation easements, other habitat protection and enhancement activities, as well as financially supporting research concerning elk, wolves and other species, and seeks to defend its

---

[3] *See* the Statement of Facts below for a complete set of citations to supporting Declarations.

direct organizational interest in realizing the benefit of those expenditures, which will be frustrated if wolves cannot be managed by the states (because they are relisted as "endangered" under the ESA) and so continue to prey on elk and other wildlife freely.[4]

If Plaintiffs are entirely successful, and the Delisting Rule is vacated in full, gray wolves will once again be listed under the ESA in multiple States of concern to coalition members, including Michigan, Minnesota, and Wisconsin, which have 4,200 wolves.[5] Wolves would also revert to endangered status in central and western Washington and Oregon, and California ("West Coast") and in Colorado and possibly neighboring States ("Southern Rocky Mountains"), as well as in various States where there simply are no gray wolves. [6] In the West Coast and Southern Rocky Mountain areas there is less suitable habitat and the habitat is more fragmented than in the core recovery areas of the Great Lake States and the previously-delisted Northern Rocky Mountains Distinct Population Segment. As such, wolf densities are naturally lower in these less suitable and fragmented habitats.

The Sportsmen Conservation Coalition emphasizes the importance of affirming delisting with respect to the Great Lakes States, where wolf numbers reached recovery objectives more than 20 years ago.[7] The fact that wolves have biologically recovered in the Great Lakes States is not challenged by some

---

[4] *See* Exhibit A, Declaration of RMEF CEO R. Kyle Weaver, ¶¶ 5-9, discussed more fully in the Statement of Facts below.

[5] Final Rule, 85 Fed. Reg. 69778, 69788. Under the rules in place just prior to the delisting ordered by the Final Rule under review here, wolves were listed as "threatened" in Minnesota and "endangered" in all other areas at issue in this case, and would revert to that status if the Final Rule is vacated in full. 50 C.F.R. 17.11(h) (2019 version, since revised by the Final Rule under review). Mexican wolves in the Southwest and red wolves in North Carolina were and are separately listed as endangered - they were not delisted. 50 C.F.R. 17.11(h) (2021)

[6] The majority of the Lower 48 States have no gray wolves, but were still included in the ESA listing as it stood prior to the Final Rule. *See* 50 C.F.R. 17.11(h) (2019 version).

[7] *See* Statement of Facts below for a full discussion of the biological recovery of wolves in the Great Lake States, where there are now 4,200 wolves.

Sportsmen Conservation Coalition Notice of Motion and Motion to Intervene, Case No. 4:21-cv-349-JSW

of the Plaintiffs[8] in these three related cases, and is not seriously disputed by other Plaintiffs.[9] The Coalition also supports FWS's decision to delist wolves in the West Coast and Southern Rocky Mountains. As explained below, those areas are not a significant portion of the range of the gray wolf, and thus FWS cannot be required to list them under the ESA.

Coalition members SAF, RMEF, and WBHA participated in previous litigation and agency proceedings regarding ESA delisting for Great Lakes wolves. Exhibit B, Declaration of SAF Director of Government Relations Bruce Tague ¶ 8; Exhibit C, Declaration of WBHA President Carl Schoettel ¶ 9. That case concluded in a D.C. Circuit opinion that largely affirmed FWS's factual findings that wolves had biologically recovered in the Great Lakes region, while vacating and remanding for more analysis as to whether delisting the Great Lakes wolves would affect wolf recovery in other areas and a more complete consideration of historic range and possibly suitable habitat.[10] SAF, RMEF, and WBHA also filed comments on the Proposed Rule leading to the Lower 48 Delisting Rule. Exhibit B at ¶ 10; Exhibit A at ¶ 11; Exhibit C at ¶ 9.

## STATEMENT OF RELEVANT FACTS

The Sportsmen Conservation Coalition is comprised of conservation, wildlife, and hunting groups from the Great Lakes area and throughout the United States that have the following interests they seek to defend in this case.

---

[8] *See* WildEarth Guardians, et al., Amended Complaint, ¶¶ 5, 26, 28, 46, 49, 74, 93, 126, 135, 140-157 (ECF 25, Case No. 4:21-cv-00349-JSW) (not disputing recovery in Great Lakes).

[9] *See* Defenders of Wildlife, et al., Complaint, ¶¶ 6, 13, 24, 34, 57, 58 (ECF 1, Case No. 4:21-cv-00344-JSW) (no specifically stated challenges to fact of gray wolf recovery in Great Lakes States) and Natural Resources Defense Council, et al., Complaint, ¶¶ 69, 72 (ECF 1, Case No. 4:21-cv-000561-JSW) (objecting to wolf hunting in Great Lakes States, but not otherwise objecting to FWS's conclusions that wolves in the Great Lakes States have recovered).

[10] *Humane Soc'y of the U.S. v. Zinke*, 865 F.3d 585, 602–03, 605–07 (D.C. Cir. 2017).

Sportsmen Conservation Coalition Notice of Motion and Motion to Intervene, Case No. 4:21-cv-349-JSW

4

A.  Defending Hunting Dogs from Wolves

Hunters often use hunting dogs in Wisconsin, Michigan, and elsewhere to help them hunt a variety of species, including bear, raccoon, upland birds and waterfowl. Exhibit C at ¶ 5; Exhibit D, Declaration of MBHA President Keith Shafer ¶ 6; Exhibit E, Declaration of WBHA member Lucas Withrow ¶ 4; Exhibit F, Declaration of MBHA member Jordan Farmer, ¶ 6. Hunting dogs are often considered part of the hunters' family. Exhibit F at ¶ 6. When hunting, the dogs often scout out in front of the hunter in order to flush out game, but gray wolves sometimes attack hunting dogs in the field, which can result in the dog's death. Exhibit E at ¶ 4; Exhibit F at ¶ 6. When gray wolves were listed as an endangered or threatened species, hunters were unable to intervene in wolf attacks to protect their dogs because it is illegal to harm animals listed as endangered for the purpose of defending property (as opposed to human life), and dogs are considered property. 50 C.F.R. 17.21(c)(1) (2021) ("take" prohibition applicable to all species listed as "endangered") and (c)(2) (exception limited to defense of human life).[11] Exhibit C at ¶ 5; Exhibit D at ¶¶ 6-7; Exhibit F at ¶ 6; Exhibit E at ¶ 4. Thus, if Plaintiffs are successful, and the Court vacates delisting and requires a full relisting, hunters pursuing other species with the aid of hunting dogs will no longer be able to use force to defend their hunting dogs from attacks by wolves. This is a significant issue in Michigan, Wisconsin and Minnesota, where wolves are so numerous (4,200 wolves, as noted above) that they are often encountered by hunters in the field.

B.  Impact of Wolf Predation on Elk.

As the gray wolf species recovered throughout the early 2000s, the population has exploded, which has frustrated many in the Great Lakes States and elsewhere, particularly elk hunters, because wolves prey

---

[11] The issue of protecting hunting dogs from wolf attacks also applies in Minnesota, which is the one State where wolves would revert to "threatened" rather than "endangered" status if the Delisting Rule is fully vacated. See 50 C.F.R. 17.40(d)(2) (2019 version in effect prior to the Delisting Rule under review here) ("take" prohibition applicable to "threatened" wolves in Minnesota – no exception for members of the public to defend their property).

Sportsmen Conservation Coalition Notice of Motion and Motion to Intervene, Case No. 4:21-cv-349-JSW

heavily on elk. Exhibit G, Declaration of RMEF member Duane Acker ¶¶ 4, 8, 9, 10 (impact of wolf predation on elk in Wisconsin); Exhibit H, Declaration of RMEF member Donald Sambucetti ¶ 8 (impact of wolf predation on elk in California); Exhibit I, Declaration of RMEF member Frederick L. Lekse, Jr. ¶ 8; *see also*, Exhibit F at ¶ 5 (noting impact of wolf predation in Wisconsin on deer); Exhibit A at ¶ 7 (RMEF has supported research on wolf predation on elk as part of RMEF's mission of elk conservation). Wolf populations should be managed in order to maintain balance with other species. Exhibit B at ¶ 6. Now that the gray wolf has been delisted, States can manage wolves to maintain healthy populations that balance predation on elk, deer and other wildlife, and well as mitigate predation on domesticated animals. *See* Exhibit A at ¶ 14; Exhibit C at ¶ 5; Exhibit F at ¶ 5; Exhibit G at ¶¶ 8-10; Exhibit H at ¶ 8; and Exhibit I at ¶ 8. This State management flexibility will be eliminated if Plaintiffs prevail and wolves are again ESA-listed.[12]

       C.  <u>Public Hunting of Wolves.</u>

Some members of the organizations making up the Sportsmen Conservation Coalition also desire to participate in wolf hunting where wolf populations are large enough to permit hunting, which is the case in Michigan, Minnesota, and Wisconsin. Exhibit B at ¶ 6; Exhibit D at ¶¶ 5-7; Exhibit A at ¶ 14; Exhibit G at ¶¶ 4, 11; Exhibit C at ¶ 6; Exhibit F at ¶ 4. Indeed, several hunts were held in those States during the period in time when Great Lakes wolves were previously delisted (2012 through 2014). *See* Exhibit F at ¶ 4. Public hunting of wolves is an efficient way to manage large wolf populations and has the benefit of avoiding unchecked predation on other species, including elk. *See* Exhibit B at ¶ 6; Exhibit

---

[12] In Minnesota, where wolves would revert to threatened rather than endangered status if Plaintiffs prevail, State employees would still be able to take specific steps to minimize wolf predation on livestock, but Minnesota would not have wolf general management authority, and could not schedule a public hunting season for wolves. 50 C.F.R. 17.40(d)(2)(i) (2019).

A at ¶¶ 14-16; Exhibit C at ¶ 4; Exhibit F at ¶ 5. If Plaintiffs are successful, and relisting occurs, these States cannot authorize hunting of wolves.

D.   Conservation Easements, Other Habitat Protection Transactions, and Research.

In addition to the forgoing interests, the value of RMEF's substantial expenditures for land and habitat conservation to benefit elk, which also benefit other species such as gray wolves, will be harmed if wolf populations become unmanaged as a consequence of this litigation. Exhibit A at ¶¶ 5-9. Specifically, RMEF has directly contributed $45 million and leveraged an additional $247 million for transactions enhancing 6.8 million acres of habitat, with a focus on elk habitat, which is often overlapped by wolf habitat. *Id.* at ¶ 8. In addition, RMEF has supported more than 55 elk management and research projects aimed directly at understanding interactions between wolves and elk, committing $1.6 million to them. *Id.* at ¶ 7. It has invested more than $15.3 million, along with $61.7 million provided by RMEF partners, in research projects regarding elk, including nutrition, disease, genetics, population dynamics, predation, and other topics. *Id.* In addition to elk, other wildlife species, including gray wolves, have and will continue to use lands protected by RMEF and benefit from RMEF's land protection and habitat enhancement efforts. *Id.* at ¶¶ 5-9. RMEF's investment in these lands will not be fully realized if the gray wolf, which benefits from these habitats, is put back on the endangered species list, resulting in substantially more wolf predation on elk than if wolves remain delisted and so can be managed. *Id.* at ¶ 9. Thus, much of RMEF's investment in States with both elk and wolf populations will be directly affected by the outcome of this case. *Id.* at ¶¶ 8, 9, and 13 (state-by-state expenditure breakdown, for the states discussed above with wolf populations delisted by the Final Rule).

E.   Hunting Guides

In addition to having recreational hunters as members, SAF, RMEF, MBHA and WBHA also have hunting guides as members, and seek to protect this economic activity of their members. Exhibit B at ¶ 7;

Exhibit A at ¶ 3; Exhibit C at ¶ 6; Exhibit D at ¶ 8; Exhibit E at ¶ 3. Guides have the same goals as recreational hunters, but additionally earn income from their hunting activities through outfitting and guiding fees. Guides can only earn income if the species being hunted are numerous enough that the State offers hunting opportunities to guides, and the client hunter concludes the prospects of success justify the expense of hiring the guide. This applies to both wolf populations and populations of species preyed upon by wolves. Where wolf populations are high, guides may offer hunts to clients who are interested in hunting wolves. Exhibit C at ¶ 7; Exhibit B at ¶ 7; Exhibit E at ¶ 3. Conversely, if wolf populations are high and hunting is not permitted, elk, deer, moose and other prey populations may decrease, leading state wildlife agencies to release fewer tags, limiting the opportunities for clients, which directly affects the financial interests of the guides. *See* Exhibit C at ¶ 8; Exhibit B at ¶ 8.

      F.  <u>Objectives for Intervention</u>.

The Sportsmen Conservation Coalition seeks intervention not only to defend the delisting rule, but also to make sure that the recovery in the Great Lakes is not forgotten in the debate over the proper status of wolves in the biologically unconnected and geographically distant areas of lower quality habitat to the west of and south of the previously-delisted Northern Rocky Mountains DPS. To understand these issues, it helps to view the map of the current wolf range in the Final Rule, moving from the east coast to west coast. 85 Fed. Reg. 69778, 69789. Human density and development are high in the east and so there is relatively little area suitable for the establishment of substantial wolf populations: no wolf populations currently exist there (occasionally a single wolf is reported). *See id.*

Moving west to the Great Lakes States, one encounters very substantial recovered wolf populations in Michigan, Wisconsin, and Minnesota, all the outgrowth of the core population that persisted in Minnesota at the time the ESA was enacted in 1973 and then grew under the protections of the ESA and expanded to Wisconsin and Michigan. The Great Lakes States have a gray wolf population of

approximately 4,200 wolves. Final Rule, 85 Fed. Reg. 69778, 69788. None of the Dakotas or other States bordering Michigan, Minnesota, and Wisconsin are considered by FWS to include current gray wolf range. *Id*. at 69789 (current range map).

Moving west from the Great Lakes, one crosses hundreds of miles of unsuitable arid plains in the Dakotas, which wolves rarely have crossed in recent history, before encountering the next major wolf population – the previously-delisted Northern Rocky Mountain Distinct Population Segment ("DPS") centered in Montana, Idaho, and Wyoming, but also defined to include eastern Washington, eastern Oregon, and northeastern Utah. *Id*. (DPS boundary shown on map). The DPS contains approximately 2,995 wolves (833 in Montana[13], 1,541 in Idaho[14], 311 in Wyoming[15], and 256 combined in the portions of Eastern Oregon and Eastern Washington within the DPS[16]). The earlier delisting of that DPS is not challenged here.[17]

Finally, traveling westward and southward past the western and southern boundaries of the Northern Rocky Mountains DPS, one encounters a few scattered gray wolf packs in central Washington

---

[13] Montana's 2019 report estimated 833 (C.I. 665-1021) https://fwp.mt.gov/binaries/content/assets/fwp/conservation/wildlife-reports/wolf/2019-mt-wolf-annual-report-final-9.9.2020all.pdf

[14] Idaho estimated 1541 ion summer of 2019 https://www.idahofb.org/News-Media/2020/01/wolf-population-estimated-for-first

[15] Wyoming estimated at least 311 in 2019 https://wolf.org/wow/united-states/wyoming/

[16] Final Rule, 85 Fed. Reg. 69778, 69788. There the Final Rule also comes up with a slightly lower total wolf count for the Northern Rocky Mountains DPS than one gets using the state-specific estimates published by Montana, Idaho, and Wyoming cited above. *See id.*

[17] *See* 76 Fed. Reg. 25590 (May 5, 2011) (reissuing at the direction of Congress a delisting rule for all of the Northern Rocky Mountains DPS except Wyoming – that delisting rule had been struck down on judicial review, but Congress then ordered that it be republished, reinstated and not subject to judicial review, Pub. L. 112–10, § 1713, 125 Stat. 38 (2011)). Wyoming was added to that delisted DPS a few years later by a separate FWS order. *Defenders of Wildlife v. Zinke*, 849 F.3d 1077 (D.C. Cir. 2017) (affirming 77 Fed. Reg. 55530 (Sept. 10, 2012)).

State and central Oregon, northeastern California, and one pack in Colorado. 85 Fed. Reg. at 69789 (FWS map showing small pockets of current wolf range in these places, with a patch in Colorado so small as to be barely visible). These wolf populations were established by dispersal from the Northern Rocky Mountain DPS and/or Canadian populations and were delisted by the Final Rule under review.[18] While these wolves are not numerous, the ESA does not mandate that a species remain listed everywhere just because there are areas where it has not fully recovered, and it also does not mandate continued listing for members of the species in non-recovered areas, unless the non-recovered area is a "significant portion of the range" of the species. *See* 16 U.S.C. § 1532 (defining "endangered species" and "threatened species" by whether the species is in danger of extinction now, or in the "foreseeable future," in "all or a significant portion of its range.") For this reason, and additional reasons articulated by FWS in the Delisting Rule, delisting the wolves to the south and west of the Northern Rocky Mountains DPS was appropriate.[19] The analysis is simply different from that for the Great Lakes wolves.

### III. ARGUMENT

Applicant-Intervenors' motion to intervene should be granted, either as-of-right under Rule 24(a)(2) or permissively under Rule 24(b), so that Applicant-Intervenors may continue to protect their substantial interests that are detailed above.

#### A.  **Intervention as of Right**.

This Circuit recognizes four prerequisites to intervention of right under Rule 24(a)(2):

---

[18] Notably, because Northern Rocky Mountains DPS delisting occurred in 2009, more than 10 years before the delisting rule now under review, the growth in the West Coast and Southern Rocky Mountains populations occurred during a time when it was largely the States and not FWS which were managing the wolf populations, meaning State management proved to not be a barrier to wolf dispersal and recolonization.

[19] FWS also determined that delisting the wolves to the west and south of the delisted Northern Rocky Mountains DPS was appropriate based on its determination that those wolves are a biological extension of and not discrete from that previously delisted DPS

Sportsmen Conservation Coalition Notice of Motion and Motion to Intervene, Case No. 4:21-cv-349-JSW

(1) [T]he intervention is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Gonzales v. Arizona*, 485 F.3d 1041, 1051 (9th Cir. 2007) (quotations omitted). The Court should "construe Rule 24(a) liberally in favor of potential intervenors." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006). "In addition to mandating broad construction, [the court's] review is guided primarily by practical considerations, not technical distinctions." *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). Applicant-Intervenors satisfy all criteria for intervention of right in this lawsuit under Rule 24(a)(2).

1.     The Motion to Intervene is Timely.

"Timeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973). The Court has not yet issued a scheduling order in this case and the Administrative Record has not yet been filed, meaning that briefing of cross-motions for summary judgment will not commence for some time. Further, the Court has just decided to allow briefing on a threshold motion to dismiss for lack of standing, so whether the Court has subject matter jurisdiction is not yet determined. Order dated May 3, 2021 at 6-7 (ECF 39 in Case No.  4:21-cv-349). The scheduling conference is scheduled for May 14, 2021, and thus the Court and parties will be aware of this Motion to Intervene when case scheduling occurs. The intervention is unquestionably timely.

2 & 3.   Applicant-Intervenors Have a Significant Interest in the Subject Matter of the Underlying Action, and Denial of this Motion would Impair or Impede Their Ability to Protect Their Interests.

Though Rule 24(a) itself does not define the required interest at stake, the Supreme Court has recognized that it must be a "significantly protectable interest." *Donnelly*, 159 F.3d 405, 409 (9th Cir. 1998). This Circuit has concluded that where "[a]n applicant has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between

---

its legally protected interest and the plaintiff's claims." *Cal. ex rel. Lockyer*, 450 F.3d at 441 (quotations omitted) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)); *see also Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993) ("It is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.") "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24, advisory comm. note to 1966 amendment (quoted in *Cal. ex rel. Locker v. U.S.*, 450 F.3d 436, 442 (9th Cir. 2006)).

The interests of the Applicant-Intervenors – described thoroughly above in the Statement of Facts – satisfy this standard. These interests are legally protected and will be impaired if Plaintiffs prevail. State common law and statutory law allows the members of Applicant-Intervenors to use force to protect their hunting dogs from wolves, but not if that state law is preempted by federal law such as the ESA. 50 C.F.R. 17.21(c)(1) and (c)(2). State laws also provide for elk hunting seasons and hunting seasons for other ungulates, but the practical value of that opportunity under State fish & game law depends upon whether wolves can be managed so that their predation on ungulates is checked. Members of the organizations in the Coalition also have a recreational interest in hunting in States where wolves are numerous enough that the authorized fish and game agency determines to hold a wolf season, but that opportunity to take advantage of state-authorized hunting seasons is eliminated if Plaintiffs prevail and the state seasons are preempted by federal ESA listing. Finally, like any property owner, RMEF has a legally protected interest in securing and enjoying the value of the conservation easements and other habitat protection and enhancement efforts it financed in furtherance of elk and other wildlife conservation efforts so that elk would thrive and elk hunters would succeed.[20] This point confirms the interests involved are economic as

---

[20]    The organizations in the Sportsmen Conservation Coalition are dedicated to protecting the heritage of America's sportsmen and sportswomen to hunt, trap, and fish, and support State management

well as recreational. *Infra* Statement of Facts (hunting guides who are members of the Applicant Intervenor organizations reasonably expect to earn income guiding wolf hunts if the defense prevails, and would also be better able to earn income guiding hunts for the ungulate species that wolves prey upon).

    **4.**  <u>Applicant-Intervenors' Interests are not Adequately Represented by the Existing Parties.</u>

    The Court should also grant Applicant-Intervenors' request for intervention because the Federal Defendants and the other parties do not adequately represent their interests. An applicant for intervention need only show that representation of his interest by existing parties "may be" inadequate, *Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n.10 (1972), and only a "minimal" showing of the possibility of inadequate representation needs to be made. *Id.*; *see Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) (discussing *Trbovich*).

    Any presumption that the government represents its citizens as *parens patriae* does not apply, or at least has been rebutted, because Applicant-Intervenors have narrow recreational and economic interests that are not shared by federal defendants. *Southwest Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir.2001). Where a private plaintiff challenges the actions of a defendant governmental regulator charged with representing the broader public interest, an applicant defendant-intervenor who has narrower, parochial interests and is the particular beneficiary of the challenged regulatory action and/or undertakes the activity authorized by the regulatory action, will often satisfy the "minimal" *Trbovich* standard. Applicant-Intervenors have unique and detailed knowledge of, and expertise in, the hunting practices throughout the Lower 48 and would be able to provide a "vigorous and helpful supplement to the [governmental agency's] defense." *NRDC v. Costle*, 561 F.2d 904, 912 (D.C.Cir.1977) (noting this factor in finding representation may be inadequate).

---

of fish and game. Tague Decl. ¶¶ 1, 4., and 6; Weaver Decl. ¶¶ 10, 2; Schoettel Decl. ¶¶ 4, 6; *see* Shafer Decl. ¶¶ 4, 10.

Although the Federal Defendants are likely to defend based on procedural compliance with relevant statutes, the Federal Defendants will continue in their regulatory function regardless of the outcome of this lawsuit. Applicant-Intervenors do not have the same assurances. Federal Defendants are charged with balancing all interests, including Plaintiffs' views and those of others directly adverse to Applicant-Intervenors. For example, the Federal Defendants are charged by the ESA with the duty to "conserve endangered species and threatened species" generally: they have no obligation to specific interests. 16 U.S.C. § 1531(c)(1). Further, where injunctive relief is requested, the managing federal agency "is not charged with a duty to represent these asserted interests in defending against the issuance of an injunction." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995). "Inadequate representation is most likely to be found when the applicants assert a personal interest that does not belong to the general public." *Id.* (quoting 3B Moore's Federal Practice, ¶ 24.07[4] at 24-78 (2d ed. 1995)). Applicant-Intervenors must obtain full party status to adequately defend their particular interests. *See generally Animal Protection Institute v. Merriam*, 242 F.R.D. 524 (D. Minn. 2006).

The government's obligation to balance competing interests raises a genuine possibility that, in the absence of intervention, the agency might dispose of all or portions of Applicant-Intervenors' rights or interests in an attempt to negotiate a settlement of the entire litigation. The agency is not obligated to represent Applicant-Intervenors' more narrow and specific interests in a defense or settlement of this action. For example, accepting a settlement offer would ease the litigation burden on Federal Defendants, but it might well be contrary to Applicant-Intervenors' interests. The Final Rule was included by the incoming Administration on January 20, 2021 on a list of rulemaking actions and other actions taken by

the prior Administration that should be reviewed by the Department of Interior for consistency with the new Administration's objectives.[21]

Additionally, no party to this litigation has shown the demonstrated long-term interest in wolf delisting in the Great Lakes States that Applicant Defendant-Intervenors have shown. The issues for judicial decision are very different as to wolves in the Great Lakes States than as to wolves in the geographically distant areas to the west and south of the Northern Rocky Mountain DPS. As discussed above, the wolves in the Great Lakes States are recovered, numerous, and separated by vast swaths of impassable terrain from the other wolf populations delisted by the rule under judicial review. No other party will focus on the unique and different issues relating to Great Lakes wolves as the Sportsmen Conservation Coalition will do. No other party to this litigation would be able to represent RMEF's interests in conserved lands and habitat and wildlife research or the interests of SAF, MBHA, and WBHA in protecting hunting dogs. Further, the other Defendant-Intervenors, SCI and NRA, consist of private parties who have no obligation to represent the interests of the Sportsmen Conservation Coalition. Indeed, a review of the SCI and NRA intervention motion shows that neither SCI nor NRA assert interests specific to the Great Lakes, where the delisting issues are different from those that exist with regard to the smaller wolf populations to the west and south of the delisted Northern Rocky Mountains DPS.

Allowing intervention would also ensure that the Court hears the full range of statutory interpretations on the issue of the wolves' range and related issues from the defense side and not just the Plaintiffs' side of the case. A key statutory interpretation issue is what happens when a species that was once endangered has recovered strongly in areas with large quantities of suitable habitat (Great Lakes, Northern Rocky Mountains) and more modestly in areas with lower quantities of suitable habitat (West

---

[21] *Fact Sheet: List of Agency Actions for Review* (White House, Jan. 20, 2021) https://www.whitehouse.gov/briefing-room/statements-releases/2021/01/20/fact-sheet-list-of-agency-actions-for-review/ The Final Rule is item 10 under Department of the Interior.

Sportsmen Conservation Coalition Notice of Motion and Motion to Intervene, Case No. 4:21-cv-349-JSW

Coast, Southern Rocky Mountains). An important part of this debate centers around the wording of the ESA's definition of "endangered species," which asks if the species is "in danger of extinction throughout all or a significant portion of its range …." 16 U.S.C. § 1532.[22] Cautious advocates – both those opposing delisting and those supporting delisting – will likely advocate that the trial and appellate courts adopt more geographically flexible interpretation of the ESA resulting in ESA protections (endangered or threatened listing) being applied to those areas (significant range portions) where recovery is limited and delisting wolves in those areas (significant range portions) where recovery has occurred.[23] By contrast, more ambitious advocates on both sides of the debate will likely advocate for less geographically flexible interpretations that may result in less nuanced decisions, such as broadly delisting or broadly listing the species across the entirety of its range, with little regard to habitability.

The different Plaintiffs in the three related cases appear to be diversifying their positions on the geographic flexibility issue, with the result that the Court will likely hear both the flexible and less flexible statutory interpretations from the Plaintiffs' side. Plaintiff WildEarth Guardians explicitly takes a geographically flexible approach, complaining about delisting of the smaller number of wolves in the West Coast States and Southern Rocky Mountains, and advocating protection of wolves in those areas even if the numerous wolves in the Great Lakes were properly delisted: "The phrase 'significant portion of its range' was intended to allow for protection *in one area*, even if a species is abundant or overabundant in another area." WildEarth Guardians Amended Complaint, ¶ 126, Case No. 4:21-cv-00349-JSW (emphasis added, citing *Defenders of Wildlife v. Norton*, 258 F.3d 1136, 1141 (9th Cir. 2001)). By

---

[22] The definition of "threatened species" uses the same significant portion of range test, with a focus on the foreseeable future, rather than present risk of extinction. 16 U.S.C. § 1532 ("The term 'threatened species' means any species which is likely to become an endangered species within the foreseeable future through all or a significant portion of its range.")

[23] However, supporters and opponents of delisting will likely take very different positions as to how to distinguish non-significant portions of the range from significant portions of the range.

Sportsmen Conservation Coalition Notice of Motion and Motion to Intervene, Case No. 4:21-cv-349-JSW

advocating continued protection (ESA listing) "in one area," WildEarth Guardians advances an argument that, if accepted by the Court, would logically result in a partial affirmance and partial reversal of FWS's Lower 48 delisting rule (reversal of delisting as to the West Coast and Southern Rocky Mountains, affirmance of delisting as to the Great Lakes).[24] By contrast, Plaintiffs NRDC, et al., take a more aggressive approach, challenging delisting everywhere, including in the Great Lakes, where prior Courts have recognized that wolves are numerically and biologically recovered.[25]

Federal Defendants may advocate a less geographically flexible interpretation, which seems quite possible given their decision to delist the entire Lower 48 gray wolf species. By contrast, while Applicant-Intervenors' primary position is that the less suitable and smaller quantities of habitat in the West Coast States and Southern Rocky Mountains are not significant portions of the range of the gray wolf, and thus are ineligible for listing under either a geographically flexible or less flexible reading of the ESA, they will also advocate in the alternative for the more flexible statutory interpretation (if some portions of the West Coast and Southern Rocky Mountains constitute a significant portion of the range, they may be considered for listing while the Great Lakes wolves are delisted). Thus, Applicant-Intervenors will ensure that the Court hears the geographically flexible interpretation from the Defendants' side and not just the Plaintiffs' side. The Federal Defendants must defend their particular statutory interpretations on the geographic flexibility issue, and other issues. The Court in these important cases should hear the other available statutory interpretations, not just from organizations which oppose delisting (Plaintiffs), but also

---

[24] WildEarth Guardians does conclude its Amended Complaint with a request for full vacatur of the Final rule, *id*. p. 4, although there are no factual allegations challenging wolf recovery in the Great Lakes.

[25] Natural Resources Defense Council, et al., Complaint, ¶¶ 68-72, 132 (ECF 1, Case No. 4:21-cv-000561-JSW). It is difficult to tell for sure whether NRDC will advocate for a less geographically flexible interpretation of the ESA, but it seems likely it will, given its overall opposition to wolf delisting, even in the Great Lakes States. *See also*, n. 10 above (citing prior decision regarding Great Lake wolves, *Humane Soc'y of the U.S.*, 865 F.3d at 602–03, 605–07).

Sportsmen Conservation Coalition Notice of Motion and Motion to Intervene, Case No. 4:21-cv-349-JSW

from equally-impacted organizations (Applicant Defendant-Intervenors) who support delisting. The Court cannot presume that "[FWS] will undoubtedly make all of [the Sportsmen Conservation Coalition's] arguments, nor… that [FWS] is capable of making and willing to make such arguments." *Citizens for Balanced Use*, 647 F.3d at 900-01.

The Sportsmen Conservation Coalition organizations have therefore satisfied the Rule 24(a)(2) elements and the Court should grant intervention as of right under Rule 24(a)(2).

### B. Permissive Intervention.

In the alternative, Applicant-Intervenors request permissive intervention under Rule 24(b), which states:

> On timely motion, the court may permit anyone to intervene who…has a claim or defense that shares with the main action a common question of law or fact…. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b). "The permissive nature of such intervention necessarily implies that, if intervention is denied, the applicant is not legally bound or prejudiced by any judgment that might be entered in the case." *Railroad Trainmen v. B&O Railroad*, 331 U.S. 519, 524 (1947). All of the arguments presented above in favor of intervention as of right also support grant of permissive intervention under the more relaxed standards applicable to permissive intervention motions.

Unlike intervention as of right, permissive intervention only requires that an intervenor's "claim or defense and the main action have a question of law or fact in common with the main action. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). Here, permissive intervention is appropriate if intervention as of right is not granted.

Applicant-Intervenors' defense of the 2020 Delisting Rule has multiple questions of law and fact in common with the main action. Applicant-Intervenors expect to argue, *inter alia*, that the Federal

Defendants' decision was legally sound, based on all the facts which will likely be a major issue between Plaintiffs and the Federal Defendants. Intervenors in the Ninth Circuit satisfy the commonality standard by "assert[ing] defenses of the [challenged agency action] directly responsive to the claims of injunction asserted by plaintiffs." *Kootenai Tribe of Idaho*, 313 F.3d at 1110.[26]

Conversely, denial of this motion to intervene will result in substantial prejudice to Applicant-Intervenors, because no named parties currently represent their significant protectable interests in defending hunting dogs and in securing the full value of investments in land acquisitions, conservation easements and other habitat protection transactions and research, and no other governmental party represents their interests in hunting wolves and in managing wolves (with or without hunting) so that wolf predation on elk and other ungulate species is checked. Without being named parties in this lawsuit, Applicant-Intervenors would have no right to appeal a potential adverse ruling by this Court affecting the validity of these listing decisions.

As noted above, Applicant-Intervenors' motion to intervene is timely, and intervention will not unfairly prejudice the parties or cause undue delay (*e.g.*, Applicant-Intervenors will abide by all briefing schedules and make this motion prior to any significant substantive motions). The substantial potential impact upon Applicant-Intervenors weighs strongly in favor of allowing their participation as parties. Accordingly, the Court should grant permissive intervention

**CONCLUSION**

For the foregoing reasons, Applicant-Intervenors respectfully request that the Court grant their motion to intervene as defendants.

---

[26] *Kootenai* is a 9th Circuit intervention case which was modified on another issue by the decision in *Wilderness Soc.*, 630 F.3d at 1173, to allow private party intervention in the liability phase of NEPA cases.

Sportsmen Conservation Coalition Notice of Motion and Motion to Intervene, Case No. 4:21-cv-349-JSW

Dated: May 6, 2021                          Respectfully submitted,

                                         _/s/George R. Pitts_____
                                         James H. Lister (AK Bar 1611111)*
                                         George R. Pitts (CA Bar 109827)
                                         Nicole M. Bayne (CA Bar 328392)**
                                         Birch, Horton, Bittner, & Cherot, P.C.
                                         1100 Connecticut Ave., NW, Suite 825
                                         Washington, D.C. 20036
                                         (202) 659-5800
                                         jlister@dc.bhb.com

*Counsel for Applicant-Intervenors Sportsmen's Alliance Foundation, Rocky Mountain Elk Foundation, Michigan Bear Hunters Association, and Wisconsin Bear Hunters Association.*

*Motion for pro-had vice status pending
**Petition for admission pending

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2021, I caused the foregoing document and attachments to be electronically filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

_/s/ George R. Pitts_____
George R. Pitts

Sportsmen Conservation Coalition Notice of Motion and Motion to Intervene, Case No. 4:21-cv-349-JSW